### ADERHOLD, Warden, v. LEE.
### SAME v. DAVIS.
### Nos. 7299, 7300.

Circuit Court of Appeals, Fifth Circuit.

Feb. 12, 1934.

Clint W. Hager, U. S. Atty., and H. T. Nichols, Asst. U. S. Atty., both of Atlanta, Ga., for appellant.

Duke C. Meredith, of Atlanta, Ga., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

These appeals were argued together, present the same question, and will be disposed of in one opinion. Lee and Davis were convicted of murder in the District of Columbia, and on May 20, 1927, Davis was sentenced "to the penitentiary (as designated by the Attorney General of the United States), there to be imprisoned for the period of twenty years and to take effect from and including this date." Lee's sentence was identical except that it was for twenty-five years. On designation by the Attorney General of

---

[2] At the conference the late Circuit Judge HICKENLOOPER dissented from the conclusions herein reached.

the Atlanta Penitentiary both were committed to that institution and have been confined there since. Before one-third but after one-fifth of their respective sentences had been served, each sought habeas corpus on the ground that by confinement in Atlanta Penitentiary instead of in a penal institution of the District of Columbia they were wrongfully deprived of the right to apply for parole after serving one-fifth of their sentences under the Act of July 15, 1932 (D. C. Code Supp. I, 1933, T. 6, § 451 et seq.), establishing for the District of Columbia its Board of Indeterminate Sentence and Parole. Their contention that imprisonment at Atlanta is unlawful and that they should be released unless transferred to the District of Columbia was upheld by the District Judge and release ordered unless they should be so transferred within thirty days.

We think the order erroneous. The applicants for habeas corpus were sentenced and committed to Atlanta Penitentiary under a provision of the Act of September 1, 1916, 39 Stat. 711, being title 6, part 3, section 402 of the Code of the District of Columbia 1929, providing that sentences to imprisonment for more than one year on conviction in the District of Columbia may be served "in some suitable jail or penitentiary or in the reformatory of the District of Columbia; and it shall be sufficient for the court to sentence the defendant to imprisonment in the penitentiary without specifying the particular prison or the reformatory of the District of Columbia and the imprisonment shall be in such penitentiary, jail, or the reformatory of the District of Columbia as the Attorney General shall from time to time designate." The sentences were regular and the commitments to Atlanta Penitentiary were lawful. The prisoners passed under the parole system provided for that institution. 18 USCA § 714 and following. The Act of May 14, 1930, § 7, 18 USCA § 753f, gave very broad control to the Attorney General over the place of confinement of all persons convicted of an offense against the United States and over their transfer. Persons convicted in the District of Columbia seem to be included. This act in no way weakened, but rather confirmed, the discretionary power of the Attorney General to have these applicants imprisoned in Atlanta. The Act of July 15, 1932, 47 Stat. 696 (D. C. Code Supp. I, 1933, T. 6, § 451 et seq.), established after its date "in the District of Columbia a Board of Indeterminate Sentence and Parole for the penal institutions for said District" and gave it duties respecting "the

prisoners committed to the penal institutions of the District" (section 1 [D. C. Code Supp. I, 1933, T. 6, § 451]), and authority to appoint parole officers "for the penal institutions of said District" (section 2 [section 452]). By section 9 [section 458] on appointment of this board the powers of the then existing parole board "over prisoners confined in the penal institutions of the District of Columbia shall cease and determine." It is beyond question that the authority of the new board and the system of parole which it was to supervise were confined to the penal institutions in the District of Columbia, and only persons therein confined were to be affected. Prisoners elsewhere remain as they were. By section 3 [section 453] future felony sentences in the courts of the District are to be indeterminate and subject to the parole provisions of the act, and the implication is that they are therefore to be served in the penal institutions of the District. But by section 7 [section 457] the punishment of felonies committed before the act is not altered. There is nothing that could include prisoners sentenced before the act and confined elsewhere unless it be the closing words of the act (D. C. Code Supp. I, 1933, T. 6, § 458): "Provided, however, That in the case of a prisoner convicted of felony committed prior to the effective date of this Act [July 15, 1932], and in the case of any prisoner convicted of misdemeanor when the aggregate sentence imposed is in excess of one year, said Board of Indeterminate Sentence and Parole may parole said prisoner, under the provisions of this Act [sections 451–458 of this title], after said prisoner has served one-fifth of the sentence imposed." This provision brings the described sentences, although not indeterminate ones, within the new scheme by treating one-fifth thereof as the equivalent of the minimum in an indeterminate sentence and may include prisoners sentenced before the date of the act if imprisoned in the institutions under the jurisdiction of the board, but it does not extend the board's jurisdiction to prisoners in other institutions nor require their return to the District of Columbia although convicted there before the act was passed. No provision of the Constitution requires Congress to make any parole provisions at all, nor to make the same ones for all penal institutions or for all prisoners, although of course the provisions made ought to be fairly and equally administered. No doubt the Attorney General can transfer the applicants to an institution of the District of Columbia, but the courts have no authority to require it. It

may be noted that Davis, having served one-third of his sentence, is now eligible to parole. at Atlanta. Neither applicant is in our judgment unlawfully imprisoned or has been unlawfully deprived of any liberty, and both should be remanded to the custody of the warden of the Atlanta Penitentiary. Direction is given accordingly.

Judgment reversed.