Henry B. JOHNSON,
Petitioner-Appellant,

v.

Jerry WILLIFORD, Warden, et al.,
Respondents-Appellees.

Henry B. JOHNSON,
Petitioner-Appellant,

v.

UNITED STATES PAROLE COMMIS-
SION, et al., Respondents-Appellees.

Nos. 84–2531, 85–1166.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1986.

Decided June 4, 1987.

Nancy Horgan, Carbondale, Ill., for peti-
tioner-appellant.

Mark E. Nagle, Asst. U.S. Atty., Wash-
ington, D.C., for respondents-appellees.

Before CUMMINGS and CUDAHY,
Circuit Judges, and MAROVITZ, Senior
District Judge.*

---

* The Honorable Abraham Lincoln Marovitz, Sen-
ior District Judge for the Northern District of    Illinois, is sitting by designation.

CUMMINGS, Circuit Judge.

Petitioner Henry B. Johnson ("Johnson") has been in prison for the past 18 years and is currently incarcerated at the United States Penitentiary at Marion, Illinois ("Marion"), serving ten sentences, aggregating a total of 13 years to life plus 13 years imprisonment. The first three sentences were imposed by the United States District Court for the District of Columbia on June 20, 1969, for his convictions under the District of Columbia Code ("D.C.Code") for armed robbery and assault with a deadly weapon. Between 1971 and 1979 Johnson was sentenced to additional terms of confinement by the Superior Court of the District of Columbia for other violations of the D.C.Code and by various federal district courts apparently for violations of federal law. In 1973 he was transferred for disciplinary reasons from the Lorton, Virginia, Reformatory ("Lorton"), operated by the District of Columbia, to the federal prison system. He was provided a parole hearing before the United States Parole Commission ("U.S. Commission") and parole was denied on April 29, 1983, because of his having "exhibited a continual pattern of assaultive behavior." Petitioner's App. 5, at 2. Pursuant to federal parole guidelines, and at the heart of the dispute embodied in Johnson's habeas petitions here, the U.S. Commission set Johnson's next full parole hearing for December 1992, which will be a 10-year reconsideration hearing, and set a statutory interim hearing, which is significantly more limited in scope, for December 1984. *Id.* at 1–2.

In 1984 Johnson, acting *pro se*, filed two habeas corpus petitions under 28 U.S.C. § 2241 that challenged the authority of the U.S. Commission to decide his suitability for release on parole under federal parole laws and regulations. In the first action, he named as respondents Jerry Williford, Warden of Marion, and former Attorney General William French Smith. While this first suit was pending, *Drakeford v. United States Parole Commission*, 83 C 4210 (S.D.Ill. May 24, 1984), opinion amended (S.D.Ill. July 15, 1984), vacated and dismissed as moot by unpublished order, Nos. 84–2295 and 84–2340 [799 F.2d 753 (table)]

(7th Cir. Aug. 27, 1986), was decided. *Drakeford* held that a prisoner convicted in a District of Columbia Superior Court for violations of the D.C. Code had to have his suitability for release on parole determined by the District of Columbia Board of Parole ("D.C. Board"), but that the U.S. Commission could conduct an in-person, on-the-record "courtesy" hearing and send the record to the D.C. Board, as was the practice with state prisoners housed at Marion. After learning of the decision in *Drakeford* and prior to a ruling in his first action, Johnson filed a second *pro se* habeas petition raising more precisely the issues discussed in *Drakeford* and naming the U.S. Commission as respondent.

On August 31, 1984, Magistrate Kenneth J. Meyers issued an order in Johnson's first habeas petition. On the basis of his previous decision in *Drakeford*, he granted that part of the petition which challenged the U.S. Commission's authority to decide Johnson's parole suitability, but he stayed enforcement of the decision pending disposition of the *Drakeford* appeal. Johnson appealed that stay. In October 1984 a hearing was held on the second habeas petition and Magistrate Meyers added Warden Williford as a respondent. On January 9, 1985, Magistrate Meyers denied the second petition because he decided that his earlier decision in *Drakeford* was distinguishable from Johnson's case. See *infra* note 1. Johnson again took an appeal. On Johnson's motion, the two appeals were consolidated on May 10, 1985, and Johnson was represented by counsel at oral argument here in November 1986.

Johnson advances a two-fold challenge to the legality of the U.S. Commission's determining his suitability for release on parole. First, he argues that the U.S. Commission lacks statutory authority to decide his case. Failing that, he takes a different tack and argues that the statutory authority of the U.S. Commission is limited to "the same power and authority" as that of D.C. parole authorities, see D.C.Code § 24–209, and therefore the U.S. Commission must apply D.C. parole laws and regulations. We re-

ject the first challenge but agree with the second.

■ In support of his first challenge, which is premised on an asserted lack of statutory authority of the U.S. Commission, Johnson argues that D.C.Code § 24–209 which refers by its terms to the U.S. "Board of Parole created by § 723a of Title 18, United States Code," does not apply to the United States Parole Commission. D.C.Code § 24–209 gives to the U.S. Board of Parole "the same power and authority" over D.C.Code offenders as is vested in the D.C. Board of Parole. Johnson admits that Public Law 94–233, which created the present U.S. Commission, contained a savings clause stating:

Whenever in any of the laws of the United States or the District of Columbia the term "United States Parole Board", or any other term referring thereto, is used, such term or terms, on and after the date of the effective date of this Act, shall be deemed to refer to the United States Parole Commission as established by the amendments made by this Act.

Parole Commission and Reorganization Act, Pub. L. No. 94–233, § 12, 90 Stat. 219, 233 (1976) (repealed by 98 Stat. 1837, 2027, 2031 (1984); 99 Stat. 1728 (1985), effective Nov. 1, 1987). Although 18 U.S.C. § 723a creating the U.S. Board of Parole was repealed in 1948, see Act of June 25, 1948, ch. 645, § 21, 62 Stat. 854, 862, the U.S. Board of Parole created thereby was replaced by the U.S. Parole Board which was eventually replaced by the U.S. Commission. The savings provision's language—" 'United States Parole Board', or any other term referring thereto"—is broad enough to include the phrase in D.C. Code § 24–209 referring to the U.S. Board of Parole created by 18 U.S.C. § 723a; therefore, § 24–209 applies to the U.S. Commission.

■ Johnson next argues that the U.S. Commission lacks authority to determine his parole suitability because the D.C. government could not delegate the power to the U.S. Commission. He adopts in part the magistrate's conclusion in *Drakeford* that the passage of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473 (the "Court Reform Act"), which established a separate system of local courts for the District of Columbia, and the District of Columbia Self-Government and Governmental Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774 (1973) (the "D.C. Home Rule Act"), limited the U.S. Commission's authority to precisely that possessed by the former U.S. Parole Board. As the argument goes, D.C. Code § 1–233(b) (enacted by the D.C. Home Rule Act, 87 Stat. 774, 814), which states that "[n]othing in [the D.C. Home Rule] Act shall be construed as vesting in the District government any greater authority ... over any federal agency[ ] than was vested in the [D.C.] Commissioner prior to January 2, 1975," the effective date of that Act, prevents the District of Columbia from delegating power to the U.S. Commission because that agency supposedly has power and authority not existing prior to January 2, 1975 and greater than that of the former U.S. Parole Board. See *Drakeford*, slip op. at 6–7.[1]

Johnson's argument fails to take account of the longstanding Congressional grant of "the same power and authority" to federal parole authorities as that exercised by the D.C. Board. See D.C.Code § 24–209. Hence, even assuming that § 1–233(b) would prevent the District government from delegating to the U.S. Commission the right to exercise greater power than that of the D.C. Board, the U.S. Commission still would be able to wield the same power as the D.C. Board. To hold other-

---

**1.** Of course, Magistrate Meyers refused to apply his earlier ruling in *Drakeford* to Johnson because, unlike the petitioner in *Drakeford*, Johnson was convicted in 1969 in the U.S. District Court of the District of Columbia and not the District of Columbia Superior Court, which had not yet been created by Congress. We have held in the companion case of *Ashby-Bey v. Meese*, 821 F.2d 1288 (7th Cir.1987), that even if a D.C.Code offender has been convicted in the District of Columbia Superior Court, the U.S. Commission still has statutory authority under D.C. Code § 24–209 to decide the prisoner's suitability for release on parole. The applicability of D.C. Code § 24–209 turns on whether a person has been convicted for a D.C. Code violation and not on the identity of the court that has convicted the person.

wise it would be necessary to conclude that the D.C. Home Rule Act repealed by implication D.C.Code § 24–209, a result which we refuse to embrace. As a general matter of statutory construction, repeals by implication are disfavored. *Morton v. Mancari,* 417 U.S. 535, 549–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290, *Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351. But see generally *Edwards v. United States,* 814 F.2d 486, 488 (7th Cir.1987) (questioning theoretical underpinnings of this maxim of statutory construction). The two Acts relied on by Johnson do not address D.C.Code § 24–209 nor do we understand them to pose an irreconcilable conflict with that Section. Although, pursuant to the Court Reform Act, D.C.Code offenders are now convicted in D.C. Superior Court, there is no reason why Congress could not consistently continue its longstanding practice of allowing federal parole authorities to exercise the same power over D.C.Code offenders in federal prisons as D.C. parole authorities do over inmates at Lorton. Also, the D.C. Home Rule Act is not inconsistent with § 24–209; it may limit the power the District government can exercise over federal agencies, see D.C.Code § 1–233(b), but it does not restrict power delegated by Congress and § 24–209 of the D.C.Code was enacted by Congress. Act of June 5, 1934, ch. 391, 48 Stat. 880. In sum, the U.S. Commission's statutory authority remains unchanged under § 24–209 despite the adoption of the Court Reform Act and the D.C. Home Rule Act.

■ This conclusion is supported by *Milhouse v. Levi,* 548 F.2d 357 (D.C.Cir.1976), in which inmates at Lorton argued that the Court Reform Act and D.C. Home Rule Act deprived the U.S. Attorney General of his preexisting statutory authority under a 1965 Act of Congress to regulate the District's furlough program at Lorton. The court of appeals rejected the argument that those Acts "reflect a congressional intent to vest the District of Columbia with a greater degree of autonomy" and that such congressional intent was so great as to overrule previous statutes that are arguably a product of an inconsistent prior Con-

gressional intent. 548 F.2d at 362. The court rejected this implied-repeal argument as follows:

Congress, in enacting both the Court Reform Act and the Home Rule Act, did not amend any of the provisions under which the Attorney General has regulated the furlough program at the Lorton Reformatory. In light of the longstanding practice in this regard, any assumption that failure to amend was due to inadvertence as distinguished from design would be to ignore the meticulous care Congress exhibited in conforming other statutory provisions to its legislative scheme for the District of Columbia.

*Id.* at 363 (footnote omitted). We agree with *Milhouse* that both Acts did not impliedly repeal a statute such as § 24–209 where the Congressional delegation of power is of long standing and consistent with the express provisions of both Acts.

■ Given our conclusion that D.C.Code § 24–209 remains in effect and empowers federal parole authorities to decide the parole suitability of D.C. Code offenders, it is necessary to address Johnson's second claim that the U.S. Commission must employ D.C. parole laws and regulations. This claim is premised on § 24–209 which provides:

The [U.S.] Board of Parole created by § 723a of Title 18, United States Code, shall have and exercise the same power and authority over prisoners convicted in the District of Columbia of crimes against the United States or now or hereafter confined in any United States penitentiary or prison (other than the penal institutions of the District of Columbia) as is vested in the District Board of Parole over prisoners confined in the penal institutions of the District of Columbia.

Johnson argues that "the same power and authority" language requires the application of D.C. parole laws, while respondents contend that the Section was only intended to enable federal parole authorities to decide the cases of D.C.Code offenders and that Congress intended federal parole laws to apply. Despite respondents' contention,

if D.C. parole laws required a D.C.Code offender to be released on parole or forbade it, the U.S. Commission's contrary action would not seem to be an exercise of "the same power and authority." However, because the full import of this phrase cannot be determined by just examining the language of § 24-209, it is essential to turn to the legislative history and other evidence of its meaning.

D.C.Code § 24-209 was enacted in 1934 as an amendment to the 1932 Act establishing the Board of Indeterminate Sentence and Parole for the District of Columbia. Act of June 5, 1934, ch. 391, 48 Stat. 880 ("1934 amendment"), amending Act of July 15, 1932, ch. 492, 47 Stat. 696 ("1932 Act"). Prior to the 1932 Act, parole decisions of prisoners held for violations of the District of Columbia Code, whether incarcerated in federal penitentiaries or District institutions, were handled entirely by federal parole authorities. See H.R.Rep. No. 881, 72d Cong., 1st Sess. 2 (1932). The 1932 Act was intended to change this practice by "reliev[ing] the United States authorities of a burden which the District officials feel they should assume." *Id.* The "object" of the 1932 Act was to establish a D.C. Indeterminate Sentence and Parole Board "with a view to bringing the procedure of the District of Columbia into conformity with the best modern penological practice," including its provision "for the imposition of indeterminate sentences upon persons found guilty of crime within the District." *Id.* The House Report quoted approvingly from the comments of Sanford Bates, Director of the Bureau of Prisons of the Department of Justice, who endorsed the bill as follows:

It is just another step in the direction of modern penological advance. I look forward to the time when every man committed to prison will leave it under parole. This is not leniency, but simply a new system of discharge.

*Id.* The House and Senate Reports contained a number of letters endorsing the bill and praising it as a vehicle for experimentation with penological reforms and as a model program for the states to study and adopt. See *id.* at 7 (Statement, dated Mar. 22, 1932, of Nat'l Comm. on Prisons and Prison Labor) ("An excellent opportunity is afforded for the development of a parole system which will be a model for many of the States and cities."); *id.* at 8 (Joint Statement of General Fed'n of Women's Clubs) ("The general and State federations are working to improve prison conditions in the several States and should Congress pass this progressive legislation it will encourage State legislatures to pass similar legislation and give impetus to the movement for better and saner methods of dealing with prisoners."); S.Rep. No. 450, 72d Cong., 1st Sess. 6, 8-10 (1932). The reports of both houses noted that there was no known opposition to the bill. H.R. Rep. No. 881, *supra,* at 3; S.Rep. No. 450, *supra,* at 4.

An immediate effect of the 1932 Act was to change the parole eligibility of most D.C.Code offenders. Most of them became eligible for parole sooner than federal offenders because they were now eligible for parole after serving a minimum sentence not to exceed one-fifth of the maximum period set by law, instead of the federal standard of one-third of the sentence imposed. 1932 Act, § 3, 47 Stat. 696, 697; see *Lee v. Aderhold,* 5 F.Supp. 950, 951 (N.D.Ga.1933), reversed, 68 F.2d 824 (5th Cir.1934), certiorari denied, 292 U.S. 633, 54 S.Ct. 718, 78 L.Ed. 1486. The Senate version of the 1932 Act contained the one-fifth provision and the House abandoned its original one-third language in favor of the Senate version, fully aware that this represented a divergence from federal law. 75 Cong.Rec. 15,036-15,037 (remarks of Rep. Black, pointing out the difference). Compare H.R.Rep. No. 881, *supra,* at 2, with S.Rep. No. 450, *supra,* at 2. On the other hand, D.C.Code offenders sentenced to life imprisonment were not eligible for parole until after serving 15 years, see 1932 Act, § 3, 47 Stat. 696, 697, amended by Act of June 6, 1940, ch. 254, § 2(a), 54 Stat. 242, 242 (codified at D.C.Code § 24-203) (amending 1932 Act so that judge could set a minimum sentence of less than 15 years for those sentenced to life imprisonment), which was the same minimum amount of

time then required of federal law offenders held under life sentences. See Act of Jan. 23, 1913, ch. 9, 37 Stat. 650; see also Act of June 25, 1948, ch. 645, § 4202, 62 Stat. 683, 854, *reprinted* in 1948 U.S.Code Cong. & Admin.News A325, A551 (codifying 18 U.S.C. § 4204, replaced by 18 U.S.C. § 4205(a) (1976) (reducing minimum period to ten years for persons serving life sentences), repealed effective Nov. 1, 1987).

Soon after passage of the 1932 Act, a D.C.Code offender challenged his detention in a federal prison in Atlanta on the basis that it deprived him of his rights under the 1932 Act. *Lee v. Aderhold,* 5 F.Supp. 950 (N.D.Ga.1933), reversed, 68 F.2d 824 (5th Cir.1934), certiorari denied, 292 U.S. 633, 54 S.Ct. 718, 78 L.Ed.1486. He had served more than one-fifth but less than one-third of his sentence and thus was eligible for parole under D.C. law but not federal law. The court of appeals rejected the petitioner's claim, holding that the Attorney General had statutory authority to imprison D.C. Code offenders in any federal prison and that "the authority of the new [D.C.] board and the system of parole which it was to · supervise were confined to the penal institutions in the District of Columbia, and only persons therein confined were to be affected. Prisoners elsewhere remain as they were." 68 F.2d at 825.

Shortly thereafter, Congress passed the 1934 amendment, now codified at D.C.Code § 24-209, which was intended to clarify the parole status of D.C. Code offenders held in federal prisons. As previously noted, the 1934 amendment provided U.S. parole authorities "the same power and authority" over D.C.Code offenders as the D.C. Board would have if they were held in a D.C. prison. The 1934 amendment was submitted to Congress by the D.C. Board of Commissioners, and their letter of transmittal, signed by Mr. M. Hazen, President of the D.C. Board of Commissioners, made up almost the entirety of the House and Senate Reports on the 1934 amendment. H.R.Rep. No. 1446, 73d Cong., 2d Sess. (1934); S.Rep. No. 674, 73d Cong., 2d Sess. (1934). The transmittal letter stated that "[t]he purpose of the proposed bill is to confer upon the Federal Parole Board the same power over prisoners convicted in the District and confined in the Federal penal institutions, as is conferred by [the 1932 Act] upon the District Parole Board over prisoners confined in the penal institutions of the District." H.R.Rep. No. 1446, *supra,* at 1. The letter explained that when the 1932 Act was passed, a penitentiary was intended to be built on part of the Lorton site for housing hardened criminals but that this project had been abandoned due to the lack of funds and consequently those D.C.Code offenders would have to be sent to federal prisons. *Id.* at 1–2. The letter stated that the D.C. Board did not have authority to parole prisoners in federal prisons, and the U.S. Board could not parole D.C.Code offenders because they had indefinite sentences, while the U.S. Board's authority was limited to prisoners serving definite sentences. *Id.* at 2. Thus, according to the D.C. Board of Commissioners, the 1934 amendment was necessary to remedy the fact that "there is no provision of law for the parole of prisoners convicted in the District of Columbia and confined in the penal institutions of the United States," for "Congress unquestionably intended that prisoners convicted in the District of Columbia should be entitled to parole." *Id.*

The transmittal letter shows that the intent of the framers of the 1934 amendment was to give D.C. Code offenders held in federal prisons and under the jurisdiction of federal parole authorities the benefit of D.C. parole laws. Certainly there was no intent to require that the D.C. Board rule on the parole of D.C. prisoners because the Board of Commissioners viewed the D.C. Board as lacking jurisdiction to decide those cases and the 1934 amendment only gave power to the U.S. Board. Equally certain, the Board of Commissioners did not intend the 1934 amendment to result in the U.S. Board's applying federal parole laws to D.C. Code offenders. Their transmittal letter shows that they viewed those laws as inapplicable because they were worded in terms of "definite" sentences and did not cover the indeterminate sentencing established by the 1932 Act. This

is consistent with the earlier statement by the Fifth Circuit in *Aderhold* that under the 1932 Act "future felony sentences in the courts of the District are to be indeterminate and subject to the parole provisions of the [1932 Act], and the implication is that they are therefore to be served in the penal institutions of the District." 68 F.2d at 825. It was after it had become clear to the Board of Commissioners and Congress that a significant number of D.C.Code offenders could not serve their sentences in D.C. prisons that the 1934 amendment was proposed and passed. If the 1934 amendment had allowed federal parole authorities to apply federal parole laws, the result would have been to remove the hardened criminals from the operation of the D.C. parole laws and undermine the meaningfulness of those laws as a model and experiment on modern penological reforms for the states to follow, which was Congress' intent in passing the 1932 Act.

Our interpretation of Congress' reasons for adopting the 1934 amendment is the same as that reached by the majority in *Cosgrove v. Smith*, 697 F.2d 1125 (D.C.Cir. 1983). It stated that "Congress apparently anticipated" that Lorton would be expanded and when that did not occur and large numbers of D.C.Code offenders continued to be sent to federal prisons, Congress was worried that they could not be paroled. *Id.* at 1130. According to *Cosgrove*, "Congress therefore enacted the 1934 amendment, to ensure that the benefits of penological reform which had been provided for D.C.Code offenders did not vanish when the offenders were committed to federal custody." *Id.* Although concluding that "the 1932 Act adopted a penal philosophy for the District, and that the 1934 amendment was meant to extend the benefits of that philosophy to D.C. offenders in federal custody," *id.*, the *Cosgrove* court did not resolve whether § 24–209 requires the U.S. Commission to use D.C. parole laws for

D.C.Code offenders, *id.* at 1132. The court apparently framed the question as whether, given the beneficent purpose of § 24–209, should it "now be read to allow a different, harsher federal standard to be imposed on D.C. [Code] offenders in federal hands" and thus remanded for further facts on the differences between federal and D.C. parole laws and regulations. *Id.* at 1130, 1132. This approach misperceives the inquiry. If the 1934 amendment was meant to ensure that the U.S. Board apply D.C. parole laws to D.C.Code offenders, as we believe it was, then the extent of any differences between the two sets of parole laws is irrelevant.[2] Nothing in the 1934 amendment suggests that its bequest of "the same power and authority" to the U.S. Board as that possessed by the D.C. Board really meant "the same power and authority, provided that the exercise of such does not result in harsher treatment for those in federal custody." We decline to embrace such a strained construction of § 24–209.[3]

Any doubt over whether the 1934 amendment requires federal parole authorities to apply D.C. parole laws and regulations is obviated by court decisions contemporaneous with the passage of the 1934 amendment and by its current application by federal parole authorities. One year after enactment of the 1934 amendment, a district court rejected a D.C.Code offender's claim that his commitment to a federal prison deprived him of his parole rights under the 1932 Act and was therefore illegal. *Bracey v. Hill*, 11 F.Supp. 148 (M.D.Pa.1935). The court upheld the transfer on the basis of the 1934 amendment:

Thus the same privileges of parole are accorded to prisoners sentenced in the District of Columbia and committed to penal institutions outside of the District as to those sentenced and confined within the District. The [1934] amendment therefore removes the question whether

---

**2.** As discussed later, some significant differences do exist. A person, such as Johnson, who has been denied parole and for whom no presumptive release date has been set, will not receive a full parole reconsideration hearing for 15 years under federal regulations, but would receive one every year under D.C. regulations. See *infra* at pp. 1287–88.

**3.** Because *Cosgrove* reached no final decision on whether § 24–209 requires the application of D.C. parole laws, the result herein does not create a conflict with that case.

a defendant, who was sentenced in the District of Columbia, could be committed to a penal institution outside of the District because of the deprivation of parole. 11 F.Supp. at 149. When the petitioner in *Bracey* was transferred to the federal prison at Leavenworth, Kansas, he again claimed that this violated his rights under the 1932 Act, which makes his indeterminate sentence "subject to the parole provisions of that act." *Bracey v. Zerbst,* 93 F.2d 8 (10th Cir.1937). The Tenth Circuit rejected his claim because it found that pursuant to the 1934 amendment, Bracey was still entitled to "the same privileges of parole" as given to "those sentenced and confined within the District;" therefore, "[t]he amended act recognizes and supplements" the power of the Attorney General to transfer D.C.Code offenders and "makes lawful" Bracey's confinement at Leavenworth. *Id.* at 10.

The D.C. Circuit similarly interpreted the 1934 amendment in its decision of *Story v. Rives,* 97 F.2d 182 (D.C.Cir.1938), certiorari denied, 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377. The petitioner therein was released from prison on conditional release and not parole and was retaken into custody under a U.S. Board warrant. He argued that the effect of the 1932 Act and the 1934 amendment was to prevent the U.S. Board from supervising released D.C. Code offenders. The D.C. Circuit rejected that interpretation of the 1934 amendment, instead construing it as only guaranteeing to D.C. Code offenders held in federal prisons the same standards for release on parole as those held in D.C. prisons:

> [T]he Act of June 5, 1934 recognized that prisoners convicted in the District of Columbia may be and are confined in other Federal penal institutions than those of the District of Columbia, and gives to the United States Board the same power over prisoners convicted in the District and confined elsewhere, as the District Board has over such prisoners confined in the District.
>
> The Act of June 5, 1934 constituted an important extension of power in the United States Board over District of Columbia prisoners in that it permitted the

Board to release such prisoners on parole from non-District institutions after serving only one-fifth of their maximum terms, while other United States prisoners could be released on parole only after serving one-third of the maximum.

*Id.* at 186 (footnote omitted). The *Story* court's recognition in dictum that the one-fifth requirement under D.C. law would apply rather than the federal one-third requirement meant that the court viewed the 1934 amendment as requiring the U.S. Board to apply D.C. parole laws.

This interpretation of the 1934 amendment is also supported by some of the current practices of the U.S. Commission. The federal government's position at oral argument of the present appeal was that the U.S. Commission has had a consistent policy of applying U.S. parole laws and regulations to D.C.Code offenders. It is unclear, however, whether when the 1934 amendment was initially applied federal parole authorities considered D.C.Code offenders no later than when they had served one-fifth of their maximum sentence, as called for by D.C. law, or waited until they had served one-third of their sentence, as was proper under federal law. Although the previously discussed cases indicate that D.C.Code offenders had to be given the benefit of the D.C. one-fifth requirement, we need not resolve that question of historical fact because it is undisputed that some D.C. parole laws are currently applied to D.C.Code offenders, belying the government's assertion of a consistent application of § 24–209. Johnson's record on appeal includes a letter of September 16, 1977, sent to him by the Assistant Director, Correctional Programs Division, of the Bureau of Prisons of the Department of Justice. That letter confirmed that the Bureau's policy is to have the U.S. Commission determine D.C.Code offenders' suitability for release but to use the D.C. parole laws for determining when such prisoners are eligible for parole: "Under the D.C.Code, your parole eligibility is after eleven years and eight months, even though the maximum parole eligibility under [the] U.S.Code is ten years." (Petitioner's App. 6, made part

of record on appeal by order of June 12, 1985). Thus the U.S. Commission, although claiming to treat D.C.Code offenders the same as federal law offenders for parole purposes, does not give them the benefit of federal law requiring a parole hearing within 10 years, 18 U.S.C. § 4205(a), but instead applies the D.C.Code requirement of a 15–year maximum eligibility for most sentences. D.C.Code § 24–203; see D.C.Code § 22–2404 (D.C.Code offender only eligible for parole after serving 20 years when life sentence imposed because of a first degree murder conviction).[4]

This reliance by federal parole authorities on D.C. parole laws for D.C.Code offenders in federal prisons was not discussed in the government's brief but was denied by the government's attorney at oral argument. In response to questions from the bench about the above-quoted letter in Johnson's Appendix 6, the government attorney stated: "I can't speak to what the rationale would have been if [the U.S. Parole Commission] had adopted the D.C. guidelines rather than the federal guideline. It is not the standard practice of the Parole Commission to use District of Columbia guidelines. I can say that with a certainty." But upon his own inquiry the day following oral argument, the government attorney discovered that D.C. parole laws are in fact used to determine when a D.C.Code offender will be given a parole hearing. According to his November 4, 1986, letter to our Clerk, the U.S. Commission relies on the Bureau of Prisons for parole eligibility dates and that U.S. governmental entity in turn relies on the D.C. Code for the dates. The government's attorney attached to his letter Program Statement Number 5050.42 issued by the Bureau of Prisons of the U.S. Department of Justice, dated March 19, 1985, which states:

This Program Statement is issued to provide staff with basic information and instructions about calculation of D.C.Code

parole eligibility dates. *It is important to remember that parole eligibility for D.C.Code offenders, unlike U.S. Code [o]ffenders, can exceed ten years.*

*Id.* at 1 (emphasis in original). The Program Statement listed as authority for its position D.C.Code § 24–209.

The Bureau of Prisons' policy of looking to the D.C.Code to determine the timing of the parole hearing is significant evidence that § 24–209 requires the federal parole authorities to apply D.C. parole laws and regulations. It is consistent with the *Story* court's interpretation of the statute enacting § 24–209 to require D.C. Code offenders to be considered for parole after serving only one-fifth of their sentence, as called for by the D.C. Code, and not the federal requirement of one-third. *Story,* 97 F.2d at 186. As an interpretation of an agency charged with enforcing § 24–209, its conclusion is relevant evidence of the proper construction of that Section. On the other hand, the U.S. Commission's contrary interpretation alleged at oral argument of this appeal is of little probative value because that agency in fact relies on D.C. parole laws (via dates provided by the Bureau of Prisons) while at the same time inconsistently claiming that D.C.Code offenders are treated as federal law offenders for parole purposes.

Nor can it be argued that the U.S. Commission's practice is the product of a hypothetical policy of using D.C. parole laws to determine eligibility for parole hearings but using federal parole laws to determine suitability for release on parole. One of Johnson's main complaints is that after the initial hearing was delayed—due to the use of D.C. parole laws—he was then not scheduled for another full hearing for 10 years, until 1992–due to the use of federal parole regulations—instead of receiving a full hearing the next year and every year thereafter, as would have been the case if D.C. parole laws and regulations had consistently been employed to determine his

---

4. The federal maximum parole eligibility was also 15 years under former section 18 U.S.C. § 4202. In 1976, the Parole Commission and Reorganization Act, Pub.L. No. 94–233, 90 Stat. 219 (1976) (repealed by 98 Stat. 1837, 2027, 2031

(1984); 99 Stat. 1728 (1985), effective Nov. 1, 1987), changed this to 10 years. Compare H.R. Rep. No. 184, 94th Cong., 1st Sess. 13 (setting out former 18 U.S.C. § 4202), with 18 U.S.C. § 4205(a) (1976).

eligibility for parole hearings. Compare D.C. Mun. Regs. tit. 28, § 103.2 (1984) (providing prisoners serving maximum sentence of 5 years or more, a rehearing 1 year after last D.C. Board action), with 28 C.F.R. §§ 2.12(b), 2.14(c) (1986) (providing for what is now a 15–year reconsideration hearing for federal prisoners whom the U.S. Commission decides at the first hearing not to parole or set a presumptive release date) and 28 C.F.R. § 2.14(a) (1986) (providing for interim hearings every two years but limited to "significant developments or changes in the prisoner's status" and allowing advance of 15–year reconsideration hearing date only for "clearly exceptional circumstances"). Johnson thus finds himself in the unenviable position of receiving the worst of both parole guidelines.

The "same power and authority" language of § 24–209 enables the U.S. Commission to make the parole-release determination for D.C.Code offenders housed in federal prisons but requires that body to employ D.C. laws and regulations in making such decisions.[5] The background and purpose of the 1934 amendment, its relation to the 1932 Act, the relevant legislative history, court decisions contemporaneous with its enactment, and its application by federal agencies convince us that this is the correct interpretation. Given our holding, we need not reach Johnson's equal protection challenge.

The government's attorney at oral argument suggested that if we were unsure about whether D.C. and federal parole laws and regulations resulted in different parole outcomes, we should wait for the resolution of that issue in the continuing *Cosgrove* litigation in the District of Columbia. Interestingly, respondents did not argue in their brief or at oral argument (nor is there any indication they argued below) that

Johnson was a member of the *Cosgrove* class action and that his suit should be consolidated with that action. We express no opinion on that issue because it was not argued on appeal, but we do reject respondents' suggestion that we should wait for the outcome in *Cosgrove*. As we have explained *supra*, whether D.C. parole laws and regulations will result in substantially different parole outcomes is irrelevant because Congress statutorily mandated federal parole authorities to apply D.C. parole laws to D.C.Code offenders.

Reversed and remanded for further proceedings consistent herewith.

---

5. Although Johnson's first three sentences were imposed by the United States District Court for the District of Columbia for violations of the D.C. Code, some of his subsequent sentences apparently were imposed for violations of the United States Code. The parties did not brief whether the U.S. Commission should apply U.S. parole laws for those offenses. We do not decide this question because it was not briefed on

appeal. See *Bonds v. Coca-Cola Co.*, 806 F.2d 1324, 1329 (7th Cir.1986).