Satara BRYSON, Petitioner,

v.

U.S. PAROLE COMMISSION,
et al., Respondents.

No. C91–0802 TEH.

United States District Court,
N.D. California.

Sept. 27, 1991.

Satara Bryson, pro se.

William McGivern, Stephen Schirle, George Stoll, U.S. Attorney's Office, San Francisco, Cal., for respondents.

ORDER

THELTON E. HENDERSON, Chief Judge.

This matter comes before the court on Ms. Satara Bryson's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The petition came on for oral argument on Monday, September 16, 1991 at 10:00 a.m. The petitioner was represented by Diane Marie Amann, Assistant Federal Public Defender. The respondents were represented by George Christopher Stoll, Assistant United States Attorney.

The petitioner contends that females who have been sentenced to prison terms under the District of Columbia Code (D.C.Code) receive less favorable parole terms than their male counterparts, in violation of the D.C.Code, and the equal protection and due process clauses of the Constitution of the United States. The respondents do not deny that there is differential treatment, but contend that such treatment violates neither the Constitution nor the laws of the United States. After careful consideration of the parties' written and oral arguments, it appears to the satisfaction of the court therefrom that the petition for writ of habeas corpus should be GRANTED.

## I. FACTUAL BACKGROUND

Nine years ago Satara Bryson was convicted in the District of Columbia (D.C.) for theft of $94.00 and received an indeterminate sentence of two to six years. Because D.C. has no prison for women, until her June 11, 1986 parole, Ms. Bryson served her sentence in Federal Correctional Institutions (F.C.I.'s) in Alderson, West Virginia, and Pleasanton, California. In November of 1987, Ms. Bryson became involved in a barroom altercation, which arose over an unpaid debt. During the altercation Ms. Bryson was hit on the back of the head with a bottle. After being struck, Bryson attacked her assailant with a razor blade which the assailant had dropped on the floor. In April of 1988, as a result of the incident, Ms. Bryson was found guilty of assault with a deadly weapon, and served 24 months in state custody. She was then released to federal custody pursuant to a federal parole violator warrant.

On March 14, 1990 Ms. Bryson appeared before a panel of the U.S. Parole Commission (Commission) in Los Angeles for her parole revocation hearing. At the hearing the panel held that since Bryson's was "an exclusively D.C.Code case, the D.C.Code guidelines [were] applicable." Based on the D.C. guidelines, the panel recommended that Ms. Bryson serve a total of 30 to 31 months and be reparoled on June 15, 1990.

However, on April 4, 1990, the Commission informed Ms. Bryson that it would remand her case for recalculation of her release date according to federal parole

---

**1.** Although Ms. Bryson filed her *pro se* petition under 28 U.S.C. § 2255, we construe it to have been properly filed under § 2241 since it challenges the decision of the United States Parole Commission.

guidelines. In response to a request by Ms. Bryson's paralegal for an explanation of the change, the Commission sent a memorandum stating that "female D.C.Code offenders are *not* to be given hearings under D.C. parole laws and regulations. Only male D.C.Code prisoners are covered by the special procedures currently in effect to comply with *Cosgrove v. Thornburgh*, (order of March 31, 1989)." Exhibit to petition for writ of habeas corpus.

Ms. Bryson's second parole revocation hearing was held on May 16, 1990. The second panel calculated Ms. Bryson's parole at the federal guideline range of 48 to 60 months, and recommended that she remain in custody until her mandatory release date of November 8, 1991. Her full term will expire on July 2, 1992.[2] Ms. Bryson appealed her parole recalculation on the ground that she should receive that same treatment as the male prisoner class in *Cosgrove v. Thornburgh*, 703 F.Supp. 995 (D.D.C.1988). The National Appeals Board of the Parole Commission affirmed the decision of the panel, stating:

> The decision in *Cosgrove v. Thornburgh* does not apply to you since you are not a member of the class of plaintiffs defined in that litigation. In the Commission's view, the application of the Federal reparole guidelines in your case does not violate the constitutional equal protection or due process guarantees.

Return to order to show cause, exhibit J.

Ms. Bryson filed this *pro se* petition for writ of habeas corpus on March 19, 1991. On April 22, 1991, this court ordered the respondent Parole Commission to show cause why a writ of habeas corpus should not be issued. On May 20, 1991, we granted the petitioner's motion for appointment of counsel, resulting in the appointment of Diane Marie Amann, Assistant Federal Public Defender.

## II. LEGAL BACKGROUND

The Parole Commission relies heavily upon the complex nature of the legal proceedings which form the backdrop for this action. While we disagree with the Commission's analysis, we find it useful to describe the legal history leading up to the current situation.

Persons convicted and sentenced under the Criminal Code of the District of Columbia (D.C.Code offenders) may be designated to serve their terms in either D.C. or federal prisons. Since D.C. operates no prisons for females, all female D.C.Code offenders are housed in federal prisons. However, D.C. does operate prisons for male inmates, so only a portion of male D.C.Code prisoners must be shipped out of the D.C. system into federal prisons.

All prisoners housed in the federal prison system, (all female and some male prisoners) fall under the jurisdiction of the U.S. Parole Commission for parole supervision and revocation of parole. D.C.Code § 24–209; *Cosgrove v. Smith*, 697 F.2d 1125 (D.C.Cir.1983). The D.C. Board of Parole hears the applications for parole filed by D.C.Code offenders who are in the D.C. prisons.

In 1973, female D.C.Code offenders housed in West Virginia filed suit as the result of a perceived difference in their treatment stemming from the dual parole system. *Garnes v. Taylor*, Civ. No. 159–72 (D.D.C.1976). As a result of the action, the female prisoners won a stipulated settlement allowing them the option of being returned to the D.C. Department of Corrections prior to their parole eligibility hearings. The female prisoners choosing this option would then come before the D.C. Board of Parole for a hearing pursuant to D.C. guidelines.

In *Cosgrove v. Thornburgh*, 703 F.Supp. 995 (D.D.C.1988), a class of federally-housed male D.C.Code offenders won a ruling that pursuant to D.C.Code § 24–209, the U.S. Parole Commission must apply the statutes and regulations of the D.C. Board of Parole, including the D.C. parole guidelines. While *Cosgrove* makes no distinction between male and female prisoners, the

---

**2.** Ms. Bryson will suffer a liberty deprivation until the expiration of her full term on July 2, 1992.

U.S. Parole Commission issued a memorandum to all regional administrators and commissioners stating that despite *Cosgrove,* "female D.C.Code offenders are *not* to be given hearings under D.C. parole laws and regulations. Only male D.C.Code prisoners are covered by the special procedures currently in effect to comply with *Cosgrove v. Thornburgh* (order of March 31, 1989)." Memorandum of Benjamin Baer, Chairman, U.S. Parole Commission, August 29, 1989, (Baer Memo), attached as exhibit to petition for writ of habeas corpus. The apparent rationale of the Parole Commission's unilateral decision to apply *Cosgrove* only to male prisoners was that the *Cosgrove* class consisted only of males.

The result of the Parole Commission's decision to restrict *Cosgrove* to males is that *all* male D.C.Code violators, both those housed in D.C. prisons and those in federal prisons, are subject to the more lenient D.C. parole guidelines, while virtually all female D.C.Code violators are subject to treatment under the less favorable federal parole guidelines. The only way for a female prisoner to receive the benefits of the D.C. parole guidelines is for her to exercise her option for transfer under the *Garnes* decree prior to her parole hearing.

## III. DISCUSSION

### A. Waiver

■ The Commission raises as a threshold argument that Ms. Bryson allegedly waived her right to seek parole under the D.C. standards. The waiver was allegedly effected by Ms. Bryson's failing to exercise her option for transfer under the *Garnes* decree, and by instead applying for parole to the U.S. Parole Commission. However, at the hearing the respondent Commission all but abandoned this argument.

Ms. Bryson has filed a declaration stating that she does not recall ever having seen or signed a Notice of Eligibility for Referral Form, pursuant to *Garnes.* Bryson Decl. ¶ 8. The Commission has filed

nothing to rebut this declaration. In a letter of May 2, 1990, Ms. Bryson's paralegal, Mark A. Neer, asked the Commission whether Ms. Bryson had received an opportunity to exercise the *Garnes* election. He received no written or oral response.

■ While the Commission offered no evidence that it ever offered the *Garnes* option to Ms. Bryson, and despite Ms. Bryson's evidence to the contrary, in its papers the Commission urged the court to extend it the "presumption of administrative regularity." Numerous courts have recognized that there has been inconsistent compliance with the *Garnes* decree, *Cosgrove v. Smith,* 697 F.2d at 1146;[3] *Pitts v. Meese,* 684 F.Supp. 303, 306 n. 7, 308–11 (D.D.C.1987), *aff'd sub nom., Pitts v. Thornburgh,* 866 F.2d 1450 (D.C.Cir.1989), and that the Parole Commission has been inconsistent in its handling of D.C.Code offenders generally. *Walker v. Luther,* 830 F.2d 1208, 1215–16 (2d Cir.1987); and *Johnson v. Williford,* 821 F.2d 1279, 1286–88 (7th Cir.1987). The Commission's inconsistency clearly extended to Ms. Bryson's case as well, as the Commission first calculated her parole terms based on the D.C. guidelines, only later, only a month before her parole release, to recant and decide that the federal guidelines should have been employed. Given the Commission's history of inconsistency in its treatment of the parole of D.C.Code offenders, we find that there can be no presumption of administrative regularity in this case.

Even if there were a presumption of administrative regularity, the presumption would be rebuttable. Ms. Bryson's unrebutted declaration makes clear that at least in her case, the *Garnes* procedure was not followed. If Ms. Bryson had been offered the benefit of the more lenient D.C. guidelines pursuant to *Garnes,* she almost certainly would have chosen to elect that option. At oral argument, the Commission admitted that it has come forth with no affidavit, declaration, or other evidence demonstrating that any prison or parole

---

**3.** "[T]here is a strong suggestion in the record that, despite the *Garnes* decree, women District offenders are not consistently receiving parole consideration by the District board under district parole standards." (Bork, J. concurring and dissenting).

official did, in fact, offer Ms. Bryson the *Garnes* option. It is unclear to this court what further evidence Ms. Bryson could produce to prove her point that there was an absence of certain procedures. The Commission is the party who would have documentary evidence if there were any, since it argues that the *Garnes* procedures were followed and that Ms. Bryson signed waiver forms.

At oral argument the court raised the option of an evidentiary hearing to determine whether the *Garnes* option was offered to Ms. Bryson. The respondents conceded that an evidentiary hearing would be pointless since they have absolutely no evidence to support the position that there was a knowing waiver. In light of these facts we must conclude that the *Garnes* option was not offered to Ms. Bryson and that there was no knowing waiver of her right to have her parole determined in accordance with D.C. guidelines. Ms. Bryson therefore has standing to proceed with this action.

B. D.C.Code § 24–209

It is clear that this case can be resolved as a matter of simple statutory construction on the basis of D.C.Code § 24–209, without even considering the petitioner's equal protection or due process arguments. In fact, at least three circuit courts and one district court have recently undertaken the same statutory construction which we now embark upon, all reaching virtually identical conclusions. Given this, it is unclear to this court how the U.S. Parole Commission can continue to misconstrue what should be, at least by now, a crystal clear statutory provision.

Section 24–209 provides that the U.S. Parole Commission:

shall have and exercise the same power and authority over prisoners convicted in the District of Columbia of crimes against the United States or now or hereafter confined in any United States penitentiary or prison (other than the penal institutions of the District of Columbia) as is vested in the District Board of Parole over prisoners confined in the pe-

nal institutions of the District of Columbia.

D.C.Code § 24–209.

Section 24–209 was originally enacted in 1934. At that time the District of Columbia had abandoned the construction of a new prison, and it was apparent that some D.C. prisoners would have to be placed in the federal prison system. *Johnson v. Williford*, 821 F.2d 1279, 1284 (7th Cir.1987). Section 24–209 was submitted to the United States Congress by the D.C. Board of Commissioners in order to ensure that D.C. prisoners housed in the federal system received the same parole treatment that they would have if they had been placed in the D.C. prisons. *Id.*

■ In *Cosgrove v. Thornburgh*, 703 F.Supp. 995, 1001 (D.D.C.1988), the D.C. District Court held that "the legislative history and past judicial interpretations of § 24–209 suggest that Congress meant for all D.C. parole laws to be utilized by the U.S. Commission in rendering parole determinations for D.C. offenders in federal custody." The Commission now argues before this court that, although there is absolutely no suggestion of gender specificity in § 24–209 or in the holding of the *Cosgrove* court, we should somehow find that the § 24–209 as interpreted in *Cosgrove* applies only to male D.C.Code offenders, and not to females. We find it impossible to follow the Commission's reasoning.

■ As a general rule, an agency is entitled to great deference in its "reasonable interpretation" of a statute which it must administer. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). However, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. [Citing cases.] If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Immigration & Naturalization Serv. v. Cardoza-Fonseca*, 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987), quoting *Chev-*

*ron, supra* 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9.

 In our case we cannot find that the Parole Commission's construction of § 24–209 is either a reasonable or a permissible interpretation of the statute. Every court since 1937 which has analyzed the statute, including the *Cosgrove* district court, cited above, has concluded that "§ 24–209 enables the U.S. Commission to make the parole-release determination for D.C.Code offenders housed in federal prisons but requires that body to employ D.C. laws and regulations in making such decisions." *Johnson v. Williford,* 821 F.2d 1279, 1288 (7th Cir.1987); *Brewer v. Swinson,* 837 F.2d 802, 805 (8th Cir.1988) (vacated as moot); *Walker v. Luther,* 830 F.2d 1208, 1210–17 (2d Cir.1987); *Story v. Rives,* 97 F.2d 182 (D.C.Cir.), cert. den., 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377 (1938); *Bracey v. Zerbst,* 93 F.2d 8 (10th Cir.1937); *Cosgrove v. Thornburgh,* 703 F.Supp. 995, 1001 (D.D.C.1988).[4] The sound reasoning of all of these courts is quite similar, and we find no reason to expand upon it. Rather than take up the pages of yet another reporter, we adopt in full the conclusions of the D.C. District Court and the District of Columbia, Second, Seventh, Eighth, and Tenth Circuit Courts. As the Second Circuit noted in *Walker, supra* at 1215, "it is apparent that in enacting § 24–209 Congress planned that the same treatment would be accorded D.C. offenders wherever situated by parole decisions being consistently made on the basis of D.C. statutory and regulatory standards. The Commission's contrary view therefore is not entitled to deference and must be rejected."

The Commission's sole argument for the proposition that we should not apply the reasoning of the above cases to Ms. Bryson appears to be that the *Cosgrove, Johnson, Brewer,* and *Walker* cases were all brought by male prisoners, and that this court should therefore not apply these decisions to Ms. Bryson, a female. In support of its position, the Commission relies heavily on the *Garnes* consent decree, which it

claims gives female prisoners the right to be referred to D.C. prior to their parole hearings under the D.C. guidelines. This, contends the Commission, allows female inmates to secure the same parole benefits as are enjoyed by males.

The Commission further argues that since female inmates already have access to the *Garnes* procedures, granting females the benefits enjoyed by male federally-housed inmates under *Cosgrove,* (requiring the U.S. Parole Commission to apply the D.C. guidelines), would grant to women a benefit not now enjoyed by men, who are not allowed to be referred to D.C. for their hearings. In essence, the Commission argues that the current system of differential treatment of male and female D.C.Code offenders is more equal than would be a system which uniformly applies the *Cosgrove* decision.

The Commission's argument is bizarre and contrary to law. Our duty here is not to construe the law to do "rough justice" between male and female prisoners, such that each has a benefit which the other is denied. Ours is a simple matter of statutory construction. Neither *Cosgrove,* nor the numerous circuit court opinions discussing § 24–209, nor the statute itself mention any distinction between male and female prisoners. The only place where the distinction has been made is in the Baer memo to the U.S. Parole Commission's staff.

While the Commission makes much of the *Garnes* consent decree, the decree has no bearing on § 24–209. Section 24–209 makes no distinction between male and female prisoners, and *Garnes* does not alter, or even mention, § 24–209. The *Cosgrove, Johnson, Brewer,* and *Walker* courts were all interpreting § 24–209 and those courts did not limit their rulings to males. We may not simply assume such a discriminatory construction.

In short, Congress has passed a statute which instructs the Commission how to calculate parole for D.C. prisoners housed in federal prisons. However, the Commission

---

**4.** In the fifty years since § 24–209 was enacted, the only judge to have held that the provision does not require the U.S. Parole Commission to apply D.C. parole guidelines to D.C.Code offenders, was Judge Bork in his partial dissent in *Cosgrove v. Smith,* 697 F.2d 1125 (D.C.Cir.1983).

has, on its own initiative, and without any evidence of Congressional intent, decided that the statute applies only to male prisoners. We must conclude that the U.S. Parole Commission's argument is not only counter-intuitive, but unreasonable and contrary to law. We find that Congress has clearly instructed the U.S. Parole Commission to apply the D.C. parole guidelines [5] to all federally-housed D.C. prisoners, whether male or female.

### C. Overcrowding

█ The Commission's final argument is that D.C. does not have sufficient facilities to parole all female D.C.Code offenders in accordance with D.C. guidelines. The reason advanced is that D.C. prisons are already overcrowded.

The Commission's argument is a red herring. It presupposes that prisoners must be transferred to D.C. prisons in order to have their parole determined in accordance with D.C. guidelines. This argument is belied even in Ms. Bryson's case. The U.S. Parole Commission initially calculated Ms. Bryson's parole eligibility in accordance with D.C. guidelines, even though she was at the time housed in a federal prison in California. Clearly it is not necessary to transfer prisoners to D.C. for the calculation of their parole terms under the D.C. guidelines. In fact, § 24–209 itself is designed to require the U.S. Parole Commission to calculate parole of federally-housed D.C.Code offenders in accordance with D.C. guidelines no matter where these prisoners are housed in the federal system.

### D. Equal Protection and Due Process

Since it is clear that the petition should be granted as a matter of statutory interpretation, there is no need to reach the constitutional issues raised.

### IV. REMEDY

█ At the hearing before the court, the commission argued that if the court should grant the petition, a proper remedy would be to order Ms. Bryson transported to the District of Columbia for a hearing before the D.C. Board of Parole. The petitioner requested that we order the Commission to abide by its decision made at the March 14, 1990 hearing, at which the D.C. guidelines were applied to Ms. Bryson's case, or that in the alternative, we order the Commission forthwith to convene a panel to apply D.C. guidelines to Ms. Bryson's case. We find either of the petitioner's options to be proper.

There is no support for the respondents' remedy. This court's order is based solely on D.C.Code § 24–209. That provision nowhere provides that prisoners should be transported back to the District of Columbia for calculation of their parole eligibility. Instead, § 24–209 mandates that the U.S. Parole Commission use D.C. guidelines in cases involving D.C.Code offenders such as Ms. Bryson. Furthermore, if overcrowding in the D.C. prisons is a concern of the respondents, as they contend that it is, requesting Ms. Bryson's transfer back to D.C. for her hearing is a rather peculiar request, since it can only exacerbate the overcrowded conditions.

Either of the remedies proposed by the petitioner would bring the Commission into compliance with § 24–209, so we give the Commission leave to choose between them. The Commission may either convene a panel to apply D.C. guidelines to Ms. Bryson's case, or proceed in accordance with the parole determination made at the March 14, 1990 hearing.

For the foregoing reasons, and after careful consideration of the written and oral arguments of the parties, and the exhibits submitted, good cause appearing therefor, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus is GRANTED pursuant to 28 U.S.C. § 2241;

2. The U.S. Parole Commission is ordered to convene a panel at the earliest practicable time and place to conduct a new parole hearing for Ms. Bryson in accordance with District of Columbia parole guidelines, including all laws and regulations applied by the D.C. Board of Parole;

---

**5.** The D.C. parole guidelines include all laws and regulations applied by the D.C. Board of Parole. *Cosgrove v. Thornburgh,* 703 F.Supp. 995, 1002 (D.D.C.1988).

**504**

3. In no case shall the ordered parole hearing be held later than December 9, 1991.

4. As an alternative to granting Ms. Bryson a new hearing as directed above, the Commission may elect to grant forthwith Ms. Bryson's parole in accordance with the determination made at the March 14, 1990 hearing, at which a U.S. Parole Commission panel applied the D.C. guidelines to Ms. Bryson's case.

IT IS SO ORDERED.