Melvin T. WALKER, Petitioner,

v.

Dennis M. LUTHER, Warden, et al., Respondents.

Louis BOLDEN, Jr., Petitioner,

v.

Dennis M. LUTHER, Warden, et al., Respondents.

Civ. A. Nos. N–85–258 (RCZ), B–85–338 (RCZ).

United States District Court, D. Connecticut.

July 16, 1986.

Joan C. Harrington, Koskoff Koskoff & Bieder, Bridgeport, Conn., for petitioner.

Barry K. Stevens, Asst. U.S. Atty., Bridgeport, Conn., for respondents.

## RULINGS ON MOTION TO DISMISS AND PETITIONS FOR WRITS OF HABEAS CORPUS

ZAMPANO, Senior District Judge.

Petitioners Walker and Bolden, although convicted of crimes under the laws of the District of Columbia, are serving their sentences in federal prisons[1] pursuant to D.C. Code Ann. § 24–425.[2] Under that statute, D.C.Code offenders may be assigned by the Attorney General to incarceration either in federal institutions or in local prisons maintained by the District of Columbia.

In these actions,[3] filed *pro se*,[4] the petitioners contend their statutory and constitutional rights were violated when the United States Parole Commission applied federal parole criteria rather than District of Columbia parole standards at the time of their parole reviews. As a result, they seek new parole hearings under the District of Columbia parole scheme.

First, petitioners allege that federal regulations impose more severe standards for the parole of male D.C. offenders incarcerated outside the District of Columbia than the criteria for parole applied to D.C. offenders imprisoned in local facilities. This disparate treatment of D.C. offenders based on their place of incarceration, they argue, denies them equal protection of the laws and also violates the statutory mandate that federal parole authorities are to "have and exercise the same power and authority" over D.C. offenders confined in federal prisons, as District of Columbia parole officials have and exercise over D.C. offenders situated in penal institutions of the District of Columbia. D.C.Code Ann. § 24–209.[5]

1. At the time their petitions were filed, both petitioners were incarcerated at the Federal Correctional Institution in Danbury, Connecticut. In January 1986, petitioner Walker received a disciplinary transfer to the Federal Correctional Institution in Ray Brook, New York.

2. D.C.Code Ann. § 24–425 provides:

All prisoners convicted in the District of Columbia for any offense ... shall be committed ... to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable and appropriate institutions, whether maintained by the District of Columbia Government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons.

3. Pursuant to Fed.R.Civ.P. 42(a), the Walker and Bolden petitions were originally consolidated with two other habeas petitions, *Johnson v. Luther,* Civil No. N–85–289, and *Martin v. Luther,* Civil No. N–85–357. Thereafter, the Johnson petition was dismissed on the ground that the petitioner escaped from custody, and the Martin petition was voluntarily withdrawn.

4. Shortly after the petitions were filed, the Court appointed Attorney Joan C. Harrington as counsel for petitioners pursuant to 18 U.S.C. § 3006A(g). The Court commends Attorney Harrington for her scholarly and dedicated representation of petitioners' cases.

5. D.C.Code Ann. § 24–209 provides:

The Board of Parole created by § 723a of Title 18, United States Code, shall have and

Second, petitioners point out that female D.C. offenders are paroled under District of Columbia standards, rather than under the federal scheme, regardless of their place of incarceration.[6] Therefore, they claim, equal protection commands that male D.C. offenders be subject to similar parole treatment whether serving their sentences locally or in federal prisons.

Respondents counter petitioners' contentions on two grounds: 1) procedurally they move to dismiss because the precise issues before this Court are the subject of a class action pending in the District of Columbia, *Cosgrove v. Meese,* Civil Action No. 80–0516 (Johnson, J.); and 2) on the merits, they submit that federal officials have plenary parole authority over male D.C. offenders placed in their custody, and that equal protection is not offended by the disparate parole treatment of male and female D.C. prisoners.

## I.

A threshold question to be addressed is whether the petitioners' cases should be dismissed in view of the congruence of issues in this and the *Cosgrove v. Meese* class action. A short history of the *Cosgrove* litigation is appropriate.

In 1981 the United States District Court for the District of Columbia (Johnson, J.), granted the government's motion for summary judgment with respect to the identical issues raised in the cases *sub judice.* In sum, the district court held that: 1)

federal officials had the authority under § 24–209 to apply federal parole standards to D.C. offenders; and 2) because the District of Columbia and federal guidelines for parole were the same,[7] no equal protection violations existed.

On January 11, 1983, the Court of Appeals reversed the decision of the district court and remanded the case for: a ruling on the motion for class certification, a factual resolution of the claim of disparate impact between federal and local parole standards, and a reconsideration of the equal protection questions. *Cosgrove v. Smith,* 697 F.2d 1125, 1134 (D.C.Cir.1983).

On September 17, 1984, the district court certified the class and subclasses, which included "all male D.C. violators who are currently housed in federal prison facilities" and who "have been or will be reviewed for parole by the U.S. Parole Commission." On December 17, 1985, a Scheduling Order was issued by the court to permit statistical discovery by the plaintiffs to determine whether or not, in fact, the federal and D.C. parole schemes differ. The plaintiffs were to complete discovery not later than August 1986, and a status conference was scheduled for September 12, 1986.

Under these circumstances, the parties in the instant case have agreed that the earliest probable date for resolution of the *Cosgrove* class action suit will be during the winter of 1987. However, upon independent inquiry, this Court has been advised

---

exercise the same power and authority over prisoners convicted in the District of Columbia of crimes against the United States or now or hereafter confined in any United States penitentiary or prison (other than the penal institutions of the District of Columbia) as is vested in the District Board of Parole over prisoners confined in the penal institutions of the District of Columbia.

**6.** In 1976 the Federal Bureau of Prisons entered into a consent decree in a lawsuit claiming discrimination in parole standards with respect to female prisoners in federal institutions and female prisoners in District of Columbia prisons. *Garnes v. Taylor,* Civil No. 159–72 (D.D.C. Dec. 10, 1976). The decree stipulated that all

female D.C. offenders should be paroled under District of Columbia, rather than federal, standards, regardless of the place of incarceration or the type of offense.

**7.** As pointed out later in *Cosgrove v. Smith,* 697 F.2d 1125, 1133 (D.C.Cir.1983), and as conceded by respondents in the instant case, the District of Columbia Parole Board and the U.S. Parole Commission employ different guidelines in making parole decisions. Among other differences, the federal parole release guidelines place heavy emphasis on offense severity, general and specific deterrence, and retribution and punishment, while the District of Columbia standards are primarily concerned with the concept of rehabilitation.

by counsel for the *Cosgrove* class [8] that, because the case is progressing slowly, a new schedule is being worked out between the parties for submission to the district court, and that the estimated time for completion of the discovery process is now the late fall of 1986. Thus, it appears that the *Cosgrove* class action may not be resolved until the spring of 1987.

Petitioners here do not dispute that facially they fall within the broad parameters of the *Cosgrove* class action membership. They request, however, that the Court permit them to withdraw from that action,[9] claiming that in significant respects their factual situation differs from the *Cosgrove* members, that they will be severely prejudiced by the anticipated long delay before that case is decided, and that, in effect, they are not being adequately represented in that lawsuit. The respondents, on the other hand, while conceding the Court's power to exercise reasonable discretion in the matter, argue that the potential conflict in decisions by this Court and the *Cosgrove* court far outweighs the prejudice to the petitioners and therefore this Court should avoid duplicative litigation.

■ Adequacy of representation, as a prerequisite to a class action suit under Fed.R.Civ.P. 23(a)(4) and as a constitutional necessity, requires 1) qualified, experienced counsel, and 2) the class representatives to have suffered the same injury and to be aligned in interest with the unnamed members of the class. *See, e.g., Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974), *cited in Malchman v. Davis,* 706 F.2d 426, 433 (2 Cir.1983).

■ The petitioners do not question the competency of counsel representing the *Cosgrove* class, but they do maintain that their individual interests are not being adequately represented because their particular parole dates are significantly earlier

under District of Columbia standards than under federal standards and markedly earlier than the anticipated resolution of the *Cosgrove* class action. Moreover, they point out that in *Cosgrove* extensive development of the factual record is necessary, while in their cases the respondents generally agree with the petitioners' calculations of parole eligibility which obviate any need of discovery procedures or crucial factual findings by the Court. In the interests of justice and fairness, they contend that this Court should proceed to decide the well-defined legal issues presented by their duly filed and timely habeas petitions. The Court agrees.

The record before the Court indicates that, if the petitioners' legal position is sustained, they would be entitled to immediate judicial redress. Unlike the situation in *Cosgrove,* wherein there is a factual controversy relating to the claimed adverse impact of the federal parole standards upon the class as a whole, the petitioners' allegations of grievous harm due to the application of the federal scheme are unchallenged in this lawsuit. Thus, with a settled factual record, the Court, with its concomitant jurisdiction, finds no reason in logic or equity under the circumstances to abstain from ruling upon the legal questions raised by the petitioners.

## II.

With respect to the merits, the Court does not write on a clean slate. Several courts have addressed the identical legal issues; others provide guidance.

In *Cosgrove v. Smith,* 697 F.2d at 1128–31, the Court of Appeals for the District of Columbia reviewed the genesis and forty-year history of § 24–209 in discussing whether federal or local parole standards apply to D.C. offenders in federal custody. While the court refrained from a definitive resolution of the issue, *id.* at 1132, it did reject the lower court's holding that "set-

---

**8.** The *Cosgrove* class is represented by the Jerome N. Frank Legal Services Organization of the Yale Law School.

**9.** During oral argument, respondents conceded that this Court has the discretion to allow the petitioners to withdraw from the *Cosgrove* class action lawsuit.

tled law" favored application of federal standards, *id.*, and further observed that the legislative history of § 24–209 "points toward the interpretation" that D.C. parole criteria should govern. *Id.* at 1130.

Two cases in this District are instructive. In *Parnell v. Gunnell*, Civil No. B–84–254 (D.Conn. Aug. 9, 1984) [Available on WESTLAW, DCTU database], Chief Judge Daly held that § 24–209 requires federal officials to apply District of Columbia rehabilitation criteria to a request for a reduction of sentence submitted by a D.C. offender lodged in a federal prison in Connecticut. Judge Daly, citing *Cosgrove*, stated the rule as follows: "D.C.Code Ann. § 24–209 places upon the [U.S.] Parole Commission the legal obligation to apply to the petitioner's request for a petition for reduction the same rehabilitation standard applicable to the District Columbia Board of Parole when it acts [on a similar request]." *Id.* at i n. 1. In *Boyd v. Luther*, Civil No. N–85–361 (D.Conn. April 28, 1986) [Available on WESTLAW, DCTU database], this Court, relying on the *Parnell* rationale, determined that § 24–209 grants federal parole officials the same authority as the District of Columbia Parole Board with respect to D.C. prisoners serving split sentences in federal prisons. *See also Gilstrap v. Clemmer*, 284 F.2d 804, 808–09 (4 Cir. 1960).

In *Drakeford v. United States Parole Commission*, Civil No. 83–4210 (S.D.Ill. May 24, 1984) [Available on WESTLAW, DCTU database], the court was faced with the exact questions presented in the instant case and ruled that District of Columbia guidelines must be applied to the consideration of parole suitability for D.C. offenders in federal custody. On appeal, the Seventh Circuit decided to hold its review "in abeyance" pending the outcome of the *Cosgrove* class action case. The main reason for abstention was that *Drakeford*, after the lower court's ruling but prior to the Seventh Circuit's appellate review, had been transferred to the District of Columbia

where he was being considered for parole by the District of Columbia Board. *Drakeford*, Civil Nos. 84–2295 and 84–2340, slip op. at 3 (7 Cir. Sept. 17, 1985).[10] *See also King v. Federal Bureau of Prisons*, 406 F.Supp. 36 (E.D.Ill.1976) (parole eligibility governed by standards of sentencing jurisdiction, rather than by parole criteria of jurisdiction housing prisoner).

Arguments that neither § 24–209 nor the equal protection clause proscribes the challenged disparate treatment of D.C. offenders are concisely set forth in Judge Bork's vigorous dissent in *Cosgrove*. 697 F.2d at 1134–46. After an extensive review of the legislative history of the statute, Judge Bork concludes that "[t]here is simply no basis for believing that in enacting [§ 24–209] Congress was making a radical departure from its long and consistent practice of permitting parole standards to vary from custodial jurisdiction to custodial jurisdiction without regard to the jurisdiction of conviction." *Id.* at 1140. With respect to the constitutional issue, it appears that Judge Bork, though recognizing the necessity of a more developed factual record, is of the opinion that the difference between the federal and District of Columbia parole guidelines easily satisfies the equal protection rationality test. As he states: "Congress could rationally conclude that it would be deleterious to prisoner morale, discipline, and rehabilitation if persons confined within the same prison, perhaps within the same cell, were subject to different standards for release on parole." *Id.* at 1144. *See also, Redman v. United States Department of Justice*, Civil No. B–81–96 (D.Conn. April 23, 1982) (Section 24–209 merely corrects the anomaly that, prior to 1934, federal authorities could not parole D.C. offenders serving indeterminate sentences).

 While the matter is not free from doubt, the Court is of the opinion for several reasons that statutory and equal protection requirements support petitioners' position. First, the penological reform intend-

---

10. The respondents reliance on the Seventh Circuit decision as authority for this Court "to abstain" is misplaced. The petitioners here, unlike Drakeford, have not received, or been offered, new parole hearings under District of Columbia standards and, unlike Drakeford, will be greatly prejudiced by a lengthy delay in the resolution of their actions.

ed by Congress with the passage of § 24–209 in 1934 should not be thwarted by interpreting the statute as authority for federal officials to impose different and harsher parole guidelines upon D.C. offenders in federal prisons than those imposed upon D.C. offenders in local prisons. Second, the application of more burdensome procedures for parole upon male D.C. offenders in federal prison than upon male D.C. offenders in District of Columbia facilities violates equal protection, unless there is some rational basis for the disparate treatment. Mere geographic location of the prisoner is not a rational ground for the dramatic increased effect the federal scheme has upon the parole release of the prisoner. In this Court's opinion, it is highly likely that a prisoner's morale, discipline and rehabilitation would be adversely affected if his release on parole was delayed by months or even years solely because the fortuitous housing situation for offenders in the District of Columbia at the time of his sentence necessitated lodging beyond the District.

■ Third, the application of federal parole standards to petitioners, as male D.C. offenders, unconstitutionally discriminates against them because all female D.C. offenders are considered for parole under District of Columbia standards regardless of their place of confinement. The respondents advance no sound rational basis for this sexual differential, and the Court finds none.

Finally, it seems clear that the sentencing process can be frustrated if male D.C. offenders are subjected to disparate treatment in parole. The imposition of just punishment requires the sentencing judge with reasonable certainty to calculate the minimum term of imprisonment resulting from the sentence. If at the time of sentencing this calculation is open to significant variations (due to the uncertainty of the place of confinement at time of sentencing, or transfer of confinement from or to

federal facility after sentencing), an unjust sentence may result if the sentencing judge is misinformed, lacks knowledge, or assumes incorrectly where the incarceration will be served. Fairness and logic dictate that District of Columbia standards for parole govern the time and criteria for release of D.C. offenders who will probably return from prison into the District of Columbia community.

### III.

Accordingly, it is hereby Ordered that petitioners Walker and Bolden be afforded, at the earliest practicable time and place, new parole hearings in accordance with District of Columbia parole standards.[11]

SO ORDERED.

11. The Court, of course, takes no position as to whether or not either petitioner should *actually* be released on parole.