**26**

The NEW YORK STATE PESTICIDE COALITION, INC., the Professional Lawn Care Association of America, the Pesticide Public Policy Foundation, Inc., the National Pest Control Association, the National Arborist Association, Elizabeth Seme, and Walter Schroeder, Plaintiffs,

v.

Thomas JORLING, as Commissioner of the New York State Department of Environmental Conservation, Defendant.

No. 88–CV–1220.

United States District Court, N.D. New York.

Jan. 19, 1989.

Nixon Hargrave Devans & Doyle, Albany, N.Y. (Thomas S. West, of counsel), for plaintiffs.

McKenna Conner & Cuneo, Washington, D.C. (Lawrence S. Ebner, of counsel), for National Pest Control Ass'n.

Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y. (Martha McCabe, Joan Leary Matthews, Asst. Attys. Gen., of counsel), for defendant.

MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

*Introduction*

The plaintiffs are persons and organizations involved in the business of applying pesticides. They bring this action to challenge certain statutes and regulations recently enacted by the State of New York alleging federal pre-emption. The disputed New York legislation and agency regulations fall under the popular heading of "Right to Know" laws. As enacted, these laws and regulations generally require all commercial pesticide applicators to: enter into a written contract with the owner of the premises where pesticides are to be applied; provide a list of the substances to

be applied along with any warnings which appear on the pesticide's EPA approved label; post signs around the perimeter of the property instructing persons not to enter the property for a twenty-four (24) hour period; give the customer a pesticide notification "cover sheet" which provides further warnings and safety information; and, in some circumstances, notify the public by newspaper of pending pesticide applications over large areas.

The dispute, in its simplest terms, is over the definition of the words "label" and "labeling" as used in the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136, *et seq.* The plaintiffs claim that the notification requirements constitute "labeling"—a task which, under FIFRA, is the singular province of the Federal Environmental Protection Agency (EPA). As such, plaintiffs assert, the State "Right to Know" enactments are invalid as pre-empted by federal law.

The defendant counters that the State laws, and the regulations which were promulgated thereunder, constitute a proper exercise of the State's authority to regulate the "sale and use" of pesticides. FIFRA specifically provides for State regulation of certain aspects of the commercial pesticide application industry; the disputed state laws and regulations are alleged to be valid assertions of this *regulatory* power.

The motion papers presented by both parties include a great deal of information concerning whether or not the "Right to Know" laws and regulations constitute a worthwhile public policy decision. That debate is interesting but irrelevant to this court's decision. In these cross motions for summary judgment it is agreed that there are no issues of material fact, but rather, a single issue of law: do New York's pesticide notification requirements constitute labeling within the meaning of 7 U.S.C. § 136v(b) and, if so, are the requirements necessarily pre-empted by federal law?

### The Legal Framework
### The Pre-emption Standard

"In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress." *California Federal Savings and Loan Association v. Guerra,* 479 U.S. 272, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). "As always, an analysis of a statute begins by an examination of its language.... For, '[a]bsent a clearly expressed legislative intention to the contrary, that language must be regarded as conclusive.'" *Walker v. Luther,* 830 F.2d 1208, 1211 (2nd Cir.1987) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

Recent Supreme Court cases have held that federal law may pre-empt state law in three ways. "First, when acting within constitutional limits, Congress, is empowered to pre-empt state law by so stating in express terms.... Second, congressional intent to pre-empt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *California Federal Savings and Loan Association v. Guerra,* 107 S.Ct. at 689.

The third manner in which federal preemption may take place is concerned with areas where Congress has not completely displaced state regulatory capacity. In such circumstances "federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs ... because 'compliance with both federal and state regulations is a physical impossibility,' ..., or because the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.; see International Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987). In any event, "courts should not lightly infer preemption." *International Paper,* 107 S.Ct. at 811.

### Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA")

Congress authorized the Federal Environmental Protection Agency to regulate

pesticides through the provisions of the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136, *et seq.* FIFRA sets out a regulatory scheme governing the manufacture, distribution, classification, sale, and use of all products which fall into a group of substances broadly defined as pesticides. 7 U.S.C. § 136a.

This action is concerned with FIFRA's grant of sole authority to "label" pesticides or conduct "labeling" of pesticides to the EPA. Under FIFRA a person or company who wants to commercially distribute a pesticide must first have it registered with the EPA. As part of the registration process the EPA requires the submission of a label which meets FIFRA's standard. That standard requires that compliance with instructions contained therein will not "cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5). "The term 'unreasonable adverse effects on the environment' means any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).

The EPA approved label sets a national standard; any use of a pesticide beyond or inconsistent with those approved by the EPA constitutes a violation of § 136j(a)(2)(G) of Title 7. FIFRA, however, allows for a great deal of state participation in the *regulation* of pesticides. For example, under certain conditions a state may decide to take primary responsibility for the enforcement of FIFRA by entering into a cooperative agreement with the EPA. 7 U.S.C. § 136w-1. New York has entered into such an agreement with the EPA—vesting the Commissioner of the State Department of Environmental Conservation with exclusive jurisdiction over the distribution, sale, use, and transportation of pesticides within the State of New York. Environmental Conservation Law ("ECL") § 33–0303(1). Moreover, as is agreed by both parties, FIFRA permits states to *ban any* pesticide within its borders while denying the states the authority to permit a pesticide use which is prohibited by the EPA. 7 U.S.C. § 136v(a).

*New York ECL Article 33*

New York has set out various requirements governing the sale and use of pesticides in both ECL Article 33, and in regulations enacted pursuant to that legislation, 6 NYCRR part 320 *et seq.* Recently, the New York State Legislature amended Article 33 by adding Title 10, "Special Requirements for Commercial Lawn Applications." ECL § 33–1001 *et seq.* Title 10 requires that prior to the application of pesticides by a commercial lawn applicator, the applicator must enter into a contract with the owner of the property. ECL § 33–1001(1). The pesticide applicator must also provide to the property owner a written copy of a list of substances to be applied and any warnings which appear on the label of the product. *Id.* Title 10 further requires the premises to which pesticides are being applied to be posted with signs instructing persons not to enter the property, and not to remove the signs for a period of twenty-four (24) hours. ECL § 33–1003.

Pursuant to ECL § 33–1005 the Commissioner established regulations which he considered "necessary and appropriate to carry out the purposes" of Title 10. These regulations are set out in 6 NYCRR Part 325. Part 325 provides for such notification requirements as: the posting of signs warning that pesticides have been applied to a premises; written contracts between the commercial pesticide applicator and the property owner; pesticide notification cover sheets which provide further cautions and safety information; and newspaper notification in instances where pesticides are being applied over a large area. The property owner must also be provided with a copy of the EPA approved FIFRA label. The Part 325 regulations are extensive, providing specific details on such things as the appearance of the warning signs and the design and content of most of the notification cover sheet. *See* § 325.3(d) through (h), and Appendices 3A, 3B, 3C, 3D, and 3E (visual notification markers); § 325.28, § 325.3(a)(1) and (2) (cover sheets).

## The Present Case

This is a case of first impression. The question presented is one of statutory construction. As noted above, the plaintiffs claim that the contracts, signs, notification cover sheets, and newspaper notices required by ECL Article 33, Title 10, and the Part 325 regulations promulgated thereunder, are pre-empted by the provisions of FIFRA. This is allegedly because New York's pesticide notification requirements constitute a "label" or "labeling" as defined in FIFRA. On the other hand, the defendant asserts that the notification requirements constitute regulation of the "sale and use" of pesticides as permitted under the Act and, therefore, are not pre-empted.

7 U.S.C. § 136(p) reads:

Label and labeling.

> (1) Label.—The term "label" means the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers.
>
> (2) Labeling.—The term "labeling" means all labels and all other written, printed, or graphic matter—
>
> (A) accompanying the pesticide or device at any time; or
>
> (B) to which reference is made on the label or in literature accompanying the pesticide or device ...

While FIFRA gives the states the authority to regulate the sale and use of pesticides, or even ban them entirely, the states are prohibited from engaging in the "labeling" of pesticides which is "in addition to or different from" those required by the EPA. As stated in 7 U.S.C. § 136v entitled "Authority of states":

> (a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this Act. [7 U.S.C. §§ 136 et seq.]
>
> (b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act. [7 U.S.C. §§ 136 et seq.]

The legislative history of the labeling requirements provide little additional clarification of the issue at hand. H.Rep. No. 92–511, 92d Cong., 1st Sess. 1–2 (1971) in relevant part reads: "State authority to change federal labeling and packaging is completely preempted." S.Rep. No. 92–838, 92d Cong., 2d Sess., states that "[7 U.S.C. § 136v(b)] preempts any labeling or packaging requirements." In any event, the initial focus of this court's analysis is the statutory language. *Walker v. Luther*, 830 F.2d 1208, 1211 (2nd Cir.1987).

The court notes that plaintiffs do not contest the manner or method of the defendant Commissioner's enforcement of the State pesticide notification laws and regulations. Therefore, this court must assume that the notification requirements are being challenged as pre-empted on their *face*, not as applied. A review of the disputed statute and regulations, leads to the conclusion that they essentially operate to 1) amplify and more widely distribute the informational content contained in the EPA approved label and 2) notify and warn persons in the area where pesticides are being applied of the very fact of the application.

This court reads the language of 7 U.S.C. § 136v(b) which prohibits states from requiring labeling "in addition to or different from" that approved by the EPA as having its main focus upon preserving the force of the information contained in the FIFRA label. Attention to the label's dictates would work to prevent "unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5).

The term "in addition to" would appear to operate to bar states from adding language to the label itself, or to the informational material accompanying the pesticide, which is not found in the EPA approved label. For example, if the FIFRA label warned of eye and skin irritation, the states could not require the *additional* warnings of headaches or stomach ulcers. Moreover, it is likely that in defining the precise informational content of a label the EPA is concerned as much with what goes into the language on the label as what does not. Placing every potential warning or use requirement onto the label could oper-

**30**

ate to dilute the most important instructions and thus violate the EPA's exclusive authority to label.

The other modifying clause of § 136v(b) bars states from engaging in labeling "different from" that required by the EPA. This language works to prohibit a state from requiring the dissemination of information which directly contradicts or disagrees with the information contained in the FIFRA label.

On the other hand, a state's ability to *regulate* the "sale and use" of pesticides under § 136v(a) would clearly allow it to require information from the label to be more widely distributed to its general population. State notification requirements concerning the commercial application of pesticides which serve merely to amplify the informational content of the FIFRA label while not diluting, distorting, or contradicting the labeling language, are within a state's regulatory capacity. If anything, notification requirements of this sort are a complimentary adjunct to the whole purpose of FIFRA's labeling requirement. That purpose being to prevent unreasonable injury to man and the environment.

Congress, by FIFRA, reserved to the states the authority to ban a pesticide entirely. Moreover, states may act as the primary enforcers of FIFRA through cooperative agreements with the EPA. From this statutory framework it is clear that Congress intended states to have a strong role in the regulation of pesticides. It would strain the overall intent of FIFRA to narrowly interpret state regulatory power concerning the dissemination of information about pesticides.

In this action the court is only concerned with the language of New York ECL Article 33, Title 10, 33-1001 *et seq.* and 6 NYCRR part 320 *et seq.* on its face, not as applied. Taking note of the strong state regulatory role envisioned in FIFRA, the statutory language of FIFRA, and the Supreme Court's admonishment that "courts should not lightly infer pre-emption", *International Paper*, 107 S.Ct. at 811, this court finds that the New York pesticide notification requirements are not on their face pre-empted by federal law.

It cannot be said that Congress expressly prohibited the states from requiring such notification. Nor does it appear that "compliance with both federal and state regulations is a physical impossibility ... [or that] state law stands 'as an obstacle to the objectives of Congress.'" *California Federal Savings and Loan Association v. Guerra,* 107 S.Ct. at 689. Though New York's notification requirements may compel the distribution of information which abbreviates and/or amplifies that which is found in the EPA approved label, the state requirements do not constitute labeling which is "in addition to or different from" that required under FIFRA. Pesticide notification requirements such as the contracts, cover sheets, visual notification markers, and newspaper ads, required by New York, do not by their terms impair the informational integrity of the FIFRA label. Rather, New York's notification requirements are a proper exercise of the State's regulatory authority.

The court finds that New York's Environmental Conservation Law Article 33, Title 10 and the regulations promulgated thereunder, 6 NYCRR part 325, are not pre-empted as labeling activity under FIFRA. Accordingly, this court grants defendant Thomas Jorling, as Commissioner of the Department of Environmental Conservation, summary judgment.

IT IS SO ORDERED.